```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :
                                           OPINION
     - against -                    :
                                           12 Civ. 3573 (DC)
ANGEL MARTINEZ,                     :      06 Cr.  987 (DC)

               Defendant.           :

- - - - - - - - - - - - - - - - - -x

APPEARANCES:     PREET BHARARA, ESQ.
                 United States Attorney for the
                 Southern District of New York
                      By:  Jessica A. Masella, Esq.
                           Assistant United States Attorney
                 One Saint Andrew's Plaza
                 New York, NY  10007

                 ANGEL MARTINEZ
                 Defendant Pro Se
                 United States Penitentiary, Big Sandy
                 P.O. Box 2068
                 Inez, KY  41224
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/18/13

CHIN, Circuit Judge

On October 29, 2009, defendant Angel Martinez was convicted by a jury of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846, and murder in furtherance thereof, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. On February 17, 2010, I sentenced Martinez principally to a term of life imprisonment. Now proceeding pro se, Martinez moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging:

(a) ineffective assistance of counsel; (b) insufficient evidence to convict him of murder; and (c) various sentencing errors. For the reasons set forth below, his motion is denied.

## BACKGROUND

A.  **The Facts**

1.  **The Murder and Crack Cocaine Conspiracy**

On November 2, 1992, shortly after being informed that Herbert Ortiz was selling drugs on his "turf," Martinez -- together with Steven Mangual and George Torres -- shot and killed Ortiz while he was making a call on a payphone. (Trial Tr. 433, 1121-22; Sen. Tr. 17).[1] After Ortiz collapsed to the ground, Mangual and Torres fled. Martinez, however, stood over Ortiz and continued to fire rounds into his body. (Trial Tr. at 1122).

The murder helped Martinez transform his organization into a substantial narcotics operation, and he was at its helm for the next fourteen years. Martinez's drug organization sold

---

[1] References are as follows: "Ind't" to the superseding indictment of Martinez issued on October 17, 2007; "Trial Tr." to the transcript of Martinez's trial beginning October 20, 2009; "PSR" to the Presentence Investigation Report, dated January 19, 2010; "Sen. Let." to the presentence letter submitted by Martinez's trial counsel, Jeremy Schneider, dated February 3, 2010; "Sen. Tr." to the transcript of Martinez's sentencing on February 17, 2010; "Pet. Mot." to Martinez's § 2255 motion, dated April 25, 2012; "Schneider Aff." to attorney Jeremy Schneider's Affirmation in opposition to Martinez's § 2255 motion, dated July, 19, 2012; "Gov't Mem." to the Government's memorandum in opposition to Martinez's § 2255 motion, dated Oct. 8, 2012; and "Pet. Reply" to Martinez's reply in support of his § 2255 motion, dated November 7, 2012.

crack, twenty-four hours a day, seven days a week. (Id. 750-51, 758-60). Distribution eventually reached a kilogram a week, netting Martinez a weekly profit of approximately $13,000. (Id. 109-12, 116-17, 146, 148-49).

### 2. The Drug Enforcement Administration Investigation

Beginning in 2005, a former member of Martinez's organization began to cooperate with the government. At the direction of the Drug Enforcement Administration (the "DEA"), the cooperating witness (the "CW") called Martinez on January 11, 2006, requesting that Martinez sell him some crack for distribution. (PSR ¶ 24). Martinez agreed. (Id.). Over the next two weeks, the CW recorded several conversations with Martinez regarding the purchase of drugs and ultimately paid Martinez and his associates $1,000 in exchange for thirty-three grams of crack. (PSR ¶¶ 25-29, 33). The CW also recorded conversations with two street-level dealers who informed the CW that they were working shifts for Martinez. (PSR ¶¶ 31-32). Based on this and other incriminating information uncovered during the DEA's investigation, Martinez was arrested.

### B. Procedural History

#### 1. Indictment, Jury Trial, and Direct Appeal

Martinez was indicted on October 17, 2007 for conspiring to distribute and possess with intent to distribute

crack cocaine, in violation of 21 U.S.C. § 846, and the murder of Ortiz, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. (Ind't ¶¶ 1-4). He was tried before a jury, which returned guilty verdicts on both counts. On February 17, 2010, I sentenced Martinez principally to a term of life imprisonment.

On February 25, 2010, Martinez appealed his conviction. By summary order issued on April 5, 2011, the Second Circuit affirmed the judgment in all respects. See United States v. Martinez, 419 F. App'x 34 (2d Cir. 2011). He did not file a petition for certiorari to the Supreme Court, and thus his judgment of conviction became final ninety days thereafter. See, e.g., Clay v. United States, 537 U.S. 522, 527, 532 (2003) ("Finality attaches . . . when the time for filing a certiorari petition expires."); see also 28 U.S.C. § 2101(c) (petition for certiorari must be filed within ninety days of entry of judgment or decree).

2.  **The Instant Motion**

On April 25 2012, Martinez timely filed this motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See 28 U.S.C. § 2255(f). His § 2255 motion alleges (a) ineffective assistance of counsel; (b) insufficient evidence to support the murder conviction; and (c) sentencing errors. Martinez's trial counsel, Jeremy Schneider, submitted

an affirmation in response to Martinez's motion on July 19, 2012. The government filed its response on October 8, 2012. Martinez submitted a reply on November 7, 2012.

## DISCUSSION

Martinez's motion is denied. First, the allegation of ineffective assistance has no merit. Second, his challenges to his murder conviction and the calculation of his Guidelines range fail procedurally and on the merits.

### A.   Ineffective Assistance of Counsel

Martinez asserts that he was prejudiced by the representation that he received. I am not persuaded.

#### 1.   Applicable Law

Allegations of ineffective assistance of counsel are evaluated in accordance with the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). See also Gueits v. Kirkpatrick, 612 F.3d 118, 122-27 (2d Cir. 2010) (applying Strickland to claim of ineffective assistance). The first prong is satisfied if counsel's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Further, Strickland instructs courts to presume "that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (inquiry is

"highly deferential"). Thus, to be constitutionally deficient, an attorney's representation must fall well outside the norm of professional conduct. Additionally, courts must evaluate the reasonableness of counsel's decisions as of the time the decision was made. See Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (advising courts to "make every effort to eliminate the distorting effects of hindsight" (omission and internal quotation marks omitted)). Hence, counsel's reasonable and "strategic choices" are "virtually unchallengeable" and generally will be respected by courts. Strickland, 466 U.S. at 690-91; see also United States v. Vegas, 27 F.3d 773, 777 (2d Cir. 1994) ("[B]ecause counsel's strategy was a reasonable one, these choices do not show incompetence.").

Even if the representation provided by an attorney is unreasonable, defendant's claim will fail unless he demonstrates that the ineffective assistance resulted in "substantial prejudice." Strickland, 466 U.S. at 687. This standard is satisfied if there is a "reasonable probability" that the outcome of the proceeding would have differed but for counsel's inadequate representation. See id. at 694. Thus, a defendant claiming ineffective assistance of counsel faces a high bar to relief.

2.  <u>Application</u>

Martinez contends that his trial counsel (a) failed to negotiate a plea agreement with the government, (b) failed to call witnesses who would "prove [he] was innocent of the murder charge," and (c) forfeited certain arguments that his Guidelines range, as determined by the presentence report ("PSR"), was wrong. (Pet. Mot. 1-4). For the reasons set forth below, these arguments fail.

a.  <u>Plea-Bargaining Process</u>

Martinez first contends that he requested a <u>Serrano</u>/<u>Alford</u> plea, by which he would plead guilty to the drug conspiracy while maintaining his innocence as to the murder charge. (Pet. Mot. ¶ 8; Pet. Reply ¶ 6). The government did not offer such a plea, however, and Schneider did not believe such a plea would be offered. (Schneider Aff. ¶ 4). Although Martinez contends that Schneider "refused to present the letter to the prosecution" (Pet. Reply ¶ 6), Scheider asserts that "[a]fter a full, frank and candid discussion . . . Martinez agreed that it would not be in his best interest to submit the letter [indicating his willingness to accept a <u>Serrano</u>/<u>Alford</u> plea]." (<u>Id.</u> (further noting that "[a]t no time did I ever refuse to submit the letter on his behalf, nor did I ever prevent him from sending it, or reading it, to the court")).

- 7 -

I find Schneider's description of events -- particularly in light of his conscientious representation of Martinez throughout the underlying proceedings -- to be credible. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (allowing district courts to resolve factual issues through submitted papers and affidavits without an in-person hearing).[2] Not only did Schneider make a tactical decision, Martinez -- at the time, at least -- agreed. Because Schneider's "strategic choice made after thorough investigation of law and facts" is "virtually unchallengeable," Strickland, 466 U.S. at 689-90, Martinez's argument fails.

Martinez further argues that counsel "refused" to convey to the government his general willingness to plead guilty. (Pet. Mot. ¶ 2). This is belied by his own admission that "[t]here is no doubt that the prosecution has recognized petitioner's intentions to plea." (Pet. Reply ¶ 4; see also Schneider Aff. ¶ 5 (referencing Schneider's plea negotiations with government)).

---

[2] Martinez's request for an evidentiary hearing is denied. (Pet. Mot. 11; Pet. Reply 11). I have received his attorney's detailed affidavit describing the events that transpired, in addition to the submissions by Martinez and the government, and I supervised the case and presided over the trial. Hence, I conclude that the testimony of Martinez or Schneider would be unlikely to shed greater light on the facts. See, e.g., Puglisi v. United States, 586 F.3d 209, 214-15 (2d Cir. 2009); Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001).

Martinez also argues, however, that "[c]ounsel for petitioner at no time bring [sic] petitioner a plea bargain." (Pet. Mot. ¶ 9). Although Schneider admits that he never brought Martinez a plea offer from the government, this was due to Martinez's refusal to consider a plea that would imprison him for more than twenty years. (Schneider Aff. ¶ 4; Pet. Reply ¶¶ 20, 24 (acknowledging his desire for a twenty-year sentence without refuting Schneider's assertions that, at the time, twenty years was a maximum or cap)). In fact, the government confirms that "Martinez's refusal to discuss any plea with a potential sentence of greater than 20 years' imprisonment made it impossible to formulate any proposal that would have been acceptable to the Government." (Gov't Mem. 31). In light of the circumstances, I accept Schneider's representations.

Martinez seems to suggest that, had Schneider "[fought for] a deal favorable to the end," he would have secured a plea offer similar to the eight to twenty-four years' imprisonment received by Mangual for Ortiz's murder in a separate proceeding. (Pet. Reply ¶¶ 20, 24). In the plea-bargaining process, an attorney's duty is to "give [his] clients professional advice on the crucial decision of whether to accept a plea offer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). Although, of course, counsel "must always communicate to

the defendant the terms of any plea bargain offered by the prosecution," id. at 182 (quotation omitted), the government is often simply unwilling to offer a plea agreement that satisfies a client's demands. Mangual was charged in state court (not federal court) with manslaughter (rather than murder) and, moreover, did not instigate the attack on Ortiz. Here, in light of Martinez's cold-blooded execution of Ortiz, the government understandably was not willing to offer Martinez a deal with comparable terms.

Martinez's present claim that he would have pled guilty -- notwithstanding both Schneider's and the government's recollections of the discussions -- amounts to a "self-serving, post-conviction statement" of little probative value. United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (requiring some objective evidence when defendant offers only self-serving testimony regarding intent to plea). His unsworn assertion -- without any supporting evidence -- does not establish with "reasonable probability" that he would have accepted a plea offering more than twenty years' imprisonment had counsel's representation been objectively reasonable. See id. (See also Pet. Mem. ¶¶ 2, 8-9; Pet. Reply ¶ 24). Hence, this argument fails.